IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-802-RJ

| | |
|---|---|
| SANDRA NOWELL HALL, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-20, DE-22] pursuant to Fed. R. Civ. P. 12(c). Claimant Sandra Nowell Hall ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on February 12, 2013, alleging disability beginning November 25, 2011. (R. 24, 200–01). Her claim was denied initially and upon reconsideration. (R. 24, 94–129). A hearing before the Administrative Law Judge ("ALJ") was held on April 6, 2015, at which Claimant was represented by counsel and

a vocational expert ("VE") appeared and testified. (R. 44–93). On September 24, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 21–43). On July 12, 2016, the Appeals Council denied Claimant's request for review and incorporated additional evidence into the record. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d

438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred in considering the opinion evidence and in considering the Global Assessment of Functioning ("GAF") scores. Pl.'s Mem. [DE-21] at 12–22.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 26). Next, the ALJ determined Claimant had the following severe impairments: carpal tunnel syndrome, obesity, lumbago, sacrolilitis, and major depressive disorder. *Id.* The ALJ also found Claimant's hypertension to be a non-severe impairment and that Claimant's allegations of fibromyalgia were not supported by objective findings or testing, such that fibromyalgia was a non-medically determinable impairment. (R. 27). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27–29). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living, and moderate limitations in social functioning and concentration, persistence, or pace with no episodes of decompensation. (R. 28–29).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations: occasionally balance, stoop, kneel, crouch, and crawl; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; must avoid

---

1 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; can frequently handle and finger bilaterally; and can frequently reach in all directions with left upper extremity, but occasionally reach overhead. (R. 30). The ALJ also found that Claimant can understand, remember, and carry out unskilled, simple, repetitive, and routine tasks in a non-production pace setting for two hours at a time with normal breaks; is able to adapt to occasional simple changes; and may have superficial contact with others, meaning successful performance of job duties involves work primarily with things and not people. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 33).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a parts manager or parts salesperson. (R. 36). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 36–37).

## V. DISCUSSION

### A. The ALJ's Consideration of the Medical Opinion Evidence

Claimant contends that the ALJ erred in considering the medical opinion evidence. Pl.'s Mem. [DE-21] at 12–18. The Commissioner counters that substantial evidence supports the ALJ's consideration of the medical opinion evidence. Def.'s Mem. [DE-23] at 5–10.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to

5

provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).[2] An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

---

2 Rulings 96-2p and 96-6p were rescinded, effective March 27, 2017, and therefore still apply to this claim. 82 Fed. Reg. 15263-01 & 15263-02 (Mar. 27, 2017).

6

### 1. Dr. Mangiardi's Opinion

Claimant argues that the ALJ did not properly weigh the opinion of Dr. Mangiardi, her treating psychologist, and erred by crediting the opinion of a consultative examiner over that of Dr. Mangiardi, her treating physician. Pl.'s Mem. [DE-21] at 12–14. The Commissioner argues that the ALJ appropriately considered the opinions of Dr. Mangiardi and the consultative examiner. Def.'s Mem. [DE-23] at 5–8.

The record contains a mental RFC Questionnaire completed by Dr. Mangiardi on March 19, 2015, preceded by a letter summarizing his findings, which is dated February 8, 2015. (R. 476–88). Dr. Mangiardi states that he has treated Claimant since September 23, 2009, and describes her mental status as follows: consistently displaying depressed and anxious symptoms; insomnia and sleep disturbances; interpersonal sensitivity and tendency to isolate herself; obsessive thinking, appetite changes, weight loss, and loss of interest; short term memory and concentration problems; flashbacks and nightmares; irritability, frustration, and anger; and brief periods of loss of focus and the perception of time. (R. 477). Dr. Mangiardi concluded as follows regarding Claimant's ability to function in the workplace:

> Regarding her psychological status, please note that [Claimant's] symptoms are severe. Her presence in the workplace will be very disappointing due to pervasive medical injuries and psychological symptoms affecting her ability to function safely and with any continuity. These symptoms include reduced short term memory and ability to concentrate, attention problems, fatigue, interpersonal sensitivity, emotional lability, lack of confidence, irritability, tendency toward isolation, daytime flashbacks to trauma on the job, psychomotor agitation, and lapses of focusing and drifting thoughts. Please see the Mental Status Examination for more detail. In my opinion a time period predicting sufficient recovery to return to part time or limited duty or vocational rehabilitation is guarded at best. But I would estimate not less than 24 to 36 months, and possibly longer.

(R. 478). The record contains ten pages of Claimant's medical treatment notes with Dr. Mangiardi,

7

dating from November 16, 2009, to August 17, 2011—all predating Claimant's alleged disability onset date of November 25, 2011. (R. 524–33). The record also contains a letter from Dr. Mangiardi dated April 14, 2015, wherein he explains that Claimant has attended 38 appointments since she established care with his practice; due to technological problems his office lost most records from 2001 through 2013, but using personal clinical data still available in paper records he compiled the summary report of mental health information; and he declines to provide the clinical data directly as that may erode his relationship with Claimant as her mental health care provider. (R. 536). The ALJ discussed Claimant's treatment with Dr. Mangiardi, stating:

> The record contains treatment notes from the claimant's treating psychologist, A.R. Mangiardi, Ph.D. However, most of the records are from before the alleged onset of disability. (Exhibit 19F). Dr. Mangiardi explained the missing treatment notes due to a system malfunction in 2011 but he reportedly treated the claimant in 2012, 2013, 2014 and 2015. Notably, the claimant has not had the level of treatment one would expect for the level of limitation alleged. Prior to the alleged onset date, the claimant saw her therapist approximately twice per month. However, she only saw the therapist twice in 2012, and was not seen against for almost 1.5 years (Exhibit 20F/3).
>
> Although, Dr. Mangiardi indicates that he saw the claimant over several sessions during the period at issue, he refused to submit the treatment notes based on his determination that they service no purpose to make public [sic] but the claimant's medical records are not public; they are necessary to adequately assess her claim; and he did submit records concerning treatment prior to the alleged onset date (Exhibit 20F). He instead provided a treatment summary with statements about the claimant's condition but the statement does not distinguish between the time the claimant started treatment and the present. He noted that he has treated the claimant as needed since 2008 (Exhibit 12). Notably, at the June 2013 psychological CE the claimant admitted that she saw Dr. Mangiardi off and on from 2008–2011 but was not currently receiving treatment or medication for a mental impairment and had not been hospitalized for a mental impairment (Exhibit 4F).
>
> Dr. Mangiardi's opinion regarding the claimant's functional capacity is given little weight. He provided a debilitating medical source statement in March 2015 indicating among other things that the claimant has no useful ability to understand very short simple instructions; maintain regular attendance; complete a normal workday or workweek; perform at a consistent pace without an unreasonable number of rest periods and unable to meet competitive standards in almost all other

> categories. He determined the claimant would miss more than 4 days of work per month. Dr. Mangiardi's assessment is in stark contrast to the claimant's presentation at the CE. At that time, her attention was only mildly impaired, she did not have interpersonal deficits that would impair work relationships; she could read, write, perform simple calculations and maintain persistence and pace but her distress tolerance was mild – moderately impaired (Example 4F). The claimant conveniently resumed treatment a few weeks after the CE (Exhibit 20F). Just prior to when Dr. Mangiardi issued his opinion, he saw the claimant 2 times in 2015 but before that had not seen her since July 2014. Without more, the record contains little if any record evidence consistent with Dr. Mangiardi's medical source statement for reasons previously discussed. As such, I find his opinion unsupported and entitled to little weight.

(R. 32–33).

Here, the ALJ ultimately afforded little weight to Dr. Mangiardi's opinion, where other record evidence did not support the extreme limitations in the opinion and the record is devoid of any of Dr. Mangiardi's treatment notes from the period at issue, such that the ALJ was unable to determine whether those treatment notes actually supported Dr. Mangiardi's opinion. Thus, the ALJ considered the supportability and consistency of Dr. Mangiardi's opinion, which are appropriate considerations under the regulations and agency rulings. *See* 20 C.F.R. § 404.1527(c) (listing supportability and consistency in a non-exhaustive list of facts to consider in assessing medical opinions); *see also Dunn v. Colvin*, 607 F. App'x 264, 268 (4th Cir. 2015) ("[T]he more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given."). "An ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998)." *Dunn*, 607 F. App'x at 267. Accordingly, where the ALJ appropriately considered the consistency and supportability of Dr. Mangiardi's opinion, this issue provides no

basis for remand.

Claimant also argues that the ALJ erred by giving more weight to the opinions of a non-treating consultative examiner, Patricia McGaffagan ("McGaffagan"), than the opinion of her treating psychologist Dr. Mangiardi. Pl.'s Mem. [DE-21] at 13–14. McGaffagan performed two consultative psychological evaluations of Claimant, dated June 4, 2013 and January 6, 2014. (R. 409–12, 431–35). Those evaluations are largely consistent with each other, and the the ALJ accurately summarized the January 2014 evaluation as follows:

> The claimant is depressed. An examination in January 2014 diagnosed her with Major Depressive Disorder, recurrent. She had suicidal ideation but no current intent. The claimant's thoughts were dominated by themes of worthlessness and guilt; however, they were logical, coherent, and reality based. (Exhibit 7F). The claimant feels better on Zoloft but still has some depression symptoms for which she sees a therapist twice a month. (Exhibit 8F/4).
>
> The claimant has alleged that her depression affects her concentration; however, during the January 2014 evaluation, she was able to repeat four digits backwards, and after instructions were repeated, could recite three of four backwards. The claimant was able to recall three words after a 5-minute delay with prompting. The claimant was able to complete serial 3s with only one error. (Exhibit 7F).

(R. 32). The ALJ went on to give these opinions great weight, stating:

> Patricia McGaffagan, M.A. conducted a psychological consultative examination on June [6], 2013. Ms. McGaffagan opined that the claimant is capable of understanding, retaining, and following instructions, but that her attention was mildly impaired. She said the claimant would be capable of performing simple, repetitive tasks and did not have interpersonal deficits that would impair work relationships. Ms. McGaffagan said the claimant's distress tolerance was mild to moderately impaired but that she would be capable of maintaining persistence and pace. Ms. McGaffagan said the claimant could read, write, and perform simple calculations. (Exhibit 4F).
>
> Ms. McGaffagan conducted an additional examination on January 6, 2014. She noted that the claimant's ability to sustain attention was moderately impaired, but that she could understand, retain, and follow instructions. The claimant would have moderate impairment in ability to relate to coworkers and supervisors. The claimant can read, write and perform simple calculations. (Exhibit 7F/5). The opinions of Ms. McGaffagan are accorded great weight. The therapy records show

that the claimant has some mental limitation, but only to the extent described in the [RFC] above.

(R. 34).

Again, the ALJ properly considered the supportability and consistency of McGaffagan's opinion with the record evidence, which are appropriate considerations under the regulations and agency rulings. *See* 20 C.F.R. § 404.1527(c). Claimant argues that the ALJ failed to address the significant changes in the findings between McGaffagan's two evaluations. Pl.'s Mem. [DE-21] at 14. Claimant fails, however, to identify any significant changes and a review of McGaffagan's evaluations demonstrates they are largely consistent with one another. *See* (R. 409–12, 431–35). Accordingly, the ALJ did not err in considering the consultative evaluations conducted by McGaffagan, and substantial evidence supports the ALJ's decision to afford more weight to her opinions than that of Dr. Mangiardi.

## 2. Dr. Walsh's Opinion

Claimant argues the ALJ erred by discounting the opinion of Dr. Walsh, her pain management specialist, where the ALJ failed to comment on all of the factors as required by 20 C.F.R. § 404.1527(c). Pl.'s Mem. [DE-21] at 18–22. The Commissioner argues that substantial evidence supports the ALJ's consideration of Dr. Walsh's opinion. Def.'s Mem. [DE-23] at 8–10.

On July 29, 2014, Dr. Walsh completed a check-box form indicating that Claimant could perform sedentary work. (R. 490). The bottom of the form states that "[t]he following medical findings support this opinion[,]" but Dr. Walsh did not provide any narrative support for the opinion that Claimant could perform sedentary work. The ALJ considered this opinion as follows:

> Zane Walsh, M.D. opined on July 29, 2014 that the claimant could do sedentary work. (Exhibit 13F/2). This opinion is given little weight. Dr. Walsh did not provide an explanation for his opinion; he merely checked off a box on a form. There is nothing in the medical evidence that demonstrates that the claimant would

  be limited to lifting no more than 10 pounds. Treatment has been conservative, and pain medication improves function and quality of life. Dr. Walsh appears to uncritically rely on the claimant's subjective complaints and possibly the invalid functional capacity evaluation. Accordingly, little weight is given.

(R. 35).

  The ALJ properly discounted this opinion because it was not supported by any narrative or explanation by Dr. Walsh, and it was inconsistent with treatment notes indicating that Claimant continually received conservative treatment and her symptoms responded well to her pain medication. *See* (R. 367, 369, 371, 373, 375, 452, 454, 456, 458, 469, 474, 489) (treatment notes indicating that Claimant responded well to her pain medication, recommending continuing with the conservative treatment plan, and instructing Claimant to continue her home exercises). An opinion may properly be discounted where it is recorded on a check-box form without specific explanation based on the medical record. *See Schaller v. Colvin*, No. 5:13-CV-334-D, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings.") (citations omitted). Additionally, an ALJ may discount an opinion where it is inconsistent with a conservative course of treatment. *See Bright v. Colvin*, No. 4:13-CV-226-FL, 2014 WL 5871348, at *10 (E.D.N.C. Nov. 12, 2014) (finding no error in the ALJ's decision to give a treating physician's opinion only some weight because, among other things, the opinion was inconsistent with the conservative nature of the claimant's treatment). Despite Claimant's argument that the ALJ failed to fully comment on all of the factors as required by the regulations, the ALJ is not required to discuss all of the factors enumerated in 20 C.F.R. § 404.1527. *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.

12

2007); *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008)).[3] Accordingly, substantial evidence supports the ALJ's consideration of Dr. Walsh's opinion and this argument provides no basis for remand.

**B.     The ALJ's Consideration of Claimant's GAF Scores**

Claimant contends that the ALJ erred by failing to discuss Claimant's GAF scores and refusing to allow counsel for Claimant to question the VE about those scores. Pl.'s Mem. [DE-21] at 19–22. The Commissioner argues that the only GAF scores in the record were contained in Dr. Mangiardi's opinion and the ALJ sufficiently considered those when considering the opinion evidence, and the ALJ did not err by directing counsel to phrase questions to the VE in vocationally-relevant terms. Def.'s Mem. [DE-23] at 7, 10–11.

The ALJ is not required to recite his or her consideration of each piece of evidence in the record. *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762, n.10 (4th Cir. 1999) ("If a reviewing court can discern 'what the ALJ did and why he did it,' the duty of explanation is satisfied") (quoting *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs*, 137 F.3d 799, 803 (4th Cir. 1998)); *Brewer v. Astrue*, No. 7:07-CV-24-FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) ("[T]he ALJ is not required to comment in the decision on every piece of evidence in the record and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.") (citing *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995)). Here, Claimant points to no other GAF scores in the record aside from those included

---

[3] Claimant also argues that the ALJ erred by determining that Dr. Walsh's opinion relied too heavily on her subjective complaints and because it was possibly based on an invalid functional capacity evaluation, Pl.'s Mem. [DE-21] at 15, but the finding that Dr. Walsh's opinion was based on Claimant's subjective complaints is bolstered by the lack of support for the opinion in the medical record evidence as discussed above in relation to Claimant's conservative course of treatment. As to the functional capacity evaluation, even assuming that the ALJ relied on this as a basis to discount Dr. Walsh's opinion and this reliance was error, substantial evidence still supports the ALJ's consideration of Dr. Walsh's opinion for the reasons previously articulated.

in Dr. Mangiardi's opinion. As discussed above, the ALJ thoroughly discussed Dr. Mangiardi's opinion and gave sufficient reasons, supported by substantial evidence, for discounting that opinion. Thus, despite the fact that the ALJ did not comment on the specific GAF scores contained in that opinion, under these circumstances, any error in this regard is harmless where the court "can discern what the ALJ did and why he did it." *Mays*, 176 F.3d at 762 n.10 (internal quotations marks and citations omitted).

As to the VE's testimony at the hearing, a review of the transcript indicates that the ALJ simply asked counsel for Claimant to phrase questions to the VE in vocationally-relevant terms, but did not prevent counsel from asking about the limitations identified in Claimant's GAF scores. *See* (R. 88–90) ("just tell her what her limitation, what limitation you're associating with any GAF score that you're aware of."); *see also* 20 C.F.R. § 404.1560(b)(2) ("a [VE] . . . may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work . . . ."). Moreover, the ALJ stipulated that the findings reflected in Dr. Mangiardi's recent medical source statement (which included the GAF scores at issue) would render Claimant disabled if they were credited (R. 90), but ultimately discounted those findings for the reasons discussed above. Thus, based on the ALJ's consideration of Claimant's GAF scores during the discussion of the medical opinion evidence, any error in preventing counsel from questioning the VE about those scores would be harmless. Accordingly, the ALJ's consideration of Claimant's GAF scores provides no basis for remand.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-20] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-22] is ALLOWED, and

14

Defendant's final decision is affirmed.

So ordered, this the 29th day of September, 2017.

_____
Robert B. Jones, Jr.
United States Magistrate Judge